[The State v. Stoddard.]

# The State *v.* Stoddard.

## *Assumpsit.*

(Decided October 19, 1915. 69 South. 980.)

1. *Militia; Civil Liability of Officer; Damages.*—Considering U. S. Army Regulations 68, 74, 106, 107, 121 and 122, it is held that in cases of lost equipment, the measure of damages in a suit by the state on the bond of such officer, was the invoice value, i. e., the sum necessary to replace the equipment, and, in case of injury, a sum necessary to restore it to a condition fit for military use.

2. *Evidence; Judicial Notice; Military Equipment.*—The courts will judicially notice that arms and military equipment have no general market value under ordinary conditions, being only valuable as military equipment.

3. *Militia; Liability of Officer.*—Under section 948, Code 1907, and U. S. Army Regulations, article 74, a captain in a National Guard and his sureties could not be held liable on his bond for loss of military property in suppressing a riot in the absence of a finding of liability by a board of survey approved by the Governor.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Action by the State against W. H. Stoddard as Captain, and the sureties on his official bond. From an insufficient judgment for plaintiff it appeals. Affirmed.

The following are the sections of the army regulations referred to in the opinion:

(68) All public property issued to the organized militia as a charge against any federal appropriation shall remain the property of the United States, and shall be receipted for by the Governor of the state or territory, or the commanding general, District of Columbia militia, or by some officer of the organized militia thereof who shall be designated by the Governor of the state or territory or the commanding general, District of Columbia militia, and shall be accounted for annually by said Governor or commanding general as required by

law, under such regulations as the Secretary of War may deem necessary to protect the interests of the United States.—Section 13, Militia Law, as amended.

(74) The responsibility of officers of the organized militia for damage to, or loss, theft, or destruction of United States property issued to them by state, territorial or District authorities is to the Governors of the State or territory, or to the commanding general of the District of Columbia militia, who makes return therefor to the War Department, and it must be determined in each case by state, territorial or district law or regulation. The War Department can exercise no jurisdiction in regard thereto. It is a matter which does not affect the accountability of the Governor or the commanding general to the United States for such property.

(106) Whenever an officer of the organized militia who is responsible for United States property shall discover that any of such property has been lost, stolen, or destroyed, or has any other cause, he should report immediately the fact, through proper militia channels, to the adjutant general of the state or territory or of the District of Columbia militia, the Governor of the state, or territory or the commanding general of the District of Columbia militia should, at the earliest practicable date thereafter, appoint a disinterested surveying officer of the organized militia to examine the property, or into the circumstances connected with the loss, theft, or destruction. The report of the surveying officer should be forwarded by the Governor or commanding general to the chief division of militia affairs, for examination and presentation to the Secretary of War. This report should be made out in triplicate, and a separate report should be made for each class of property involved, quartermaster's subsistence, medical, engineer, ordnance, signal, and for publications. The report should be made

36—13

on Form No. 16, D. M. A., and should, when practicable, include the original invoice value of the property and the date when the stores or supplies were issued to the organization.

(107) If it shall appear to the Secretary of War from the proceedings of the surveying officer that the property has been lost or destroyed through unavoidable causes, he is authorized to relieve the state, territory or District of Columbia from further accountability therefor. If, in the opinion of the Secretary of War, the evidence submitted with the proceedings is not such as to show that the loss or destruction of the property could not have been avoided by the exercise of reasonable care, the money value thereof will be charged against the allotment of the state, territory or the District of Columbia, as the case may be, under section 1661, Rev. Stat., as amended [U. S. Comp. St. 1913, § 3054], unless the property is replaced in kind, by purchase, under the provisions of section 17 of the Militia Law, in which case further action would be rendered unnecessary.

(121) Officers of the organized militia to whom United States property is issued by Governor of the states or territories or by the commanding general, District of Columbia militia, and who thus become responsible for the care, preservation, and proper use of such property, should be required to give bond to the state, territory, or district authorities for the proper care and safe keeping of such property, and should be charged by said authorities for any damage thereto or loss or destruction thereof due to avoidable causes. The moneys so collected should be deducted from any state pay that may be due or that may become due such responsible officers for military services, unless they shall show to the satisfaction of the proper authorities, by their own affidavits or by those

of other witnesses, that the damages, loss, or destruction was occasioned by unavoidable causes and without fault or neglect on their part. It should be understood, however, that this is a matter solely between the officer involved and the local military authorities. The transactions involved in connection with this procedure do not affect the accountability of Governors or the commanding general, District of Columbia militia, to the United States.

(122) The question of the disposition of funds collected by state or territorial authorities from individuals to whom United States property has been issued by Governors, as indicated in paragraph 121, and who may become responsible for the loss or destruction of such property is one solely for determination by the state or territorial authorities and not by the War Department; the latter is not in position nor authorized by law to decide that individual members of the organized militia who are responsible for the loss or destruction of property shall, or shall not, be charged with the value thereof.

W. L. MARTIN, Attorney General, for appellant.

HILL, HILL, WHITING & STERN, for appellee.

BROWN, J.—Action by the state on the official bond of appellee Stoddard as Captain of Company I, Second Regiment, Alabama National Guard, for the safe-keeping and return to the proper authority of arms and equipment issued to him under the provisions of sections 947 and 948 of the Code, and the army regulations of the United States applicable thereto. The defendants pleaded the general issue in short, by consent, with leave to give in evidence matters of special defense thereunder. The trial was by the court without the inter-

vention of a jury, and resulted in a judgment for one cent and costs.

The contention of the state seems to be that the invoice value of the arms and equipment lost governs the amount of its recovery, if entitled to recover at all. This contention is predicated on the provision made in articles 68, 74, 107, 106, 121, and 122, of the army regulations governing in part the issuance of arms and equipment to the militia of the several states and territories. (The Reporter will set out the articles above named.)

It will be noted that article 106 of the army regulations provides that when an officer of the organized militia who is responsible for arms and equipment discovers that the same has been lost, stolen, or destroyed, or has become unserviceable or unsuitable for use in service, or from other causes, he shall report the facts through the proper military channels, and the appointment of a surveying officer is provided, who is authorized and required to examine the property or the circumstances of the loss, theft, or destruction, and who is required to make in triplicate a written report on form 16 D. M. A., which shall include when practical "the original invoice value of the property." This report is made to the Governor of the state, and forwarded by the Governor to the Chief Division of Military Affairs, for examination and presentment to the Secretary of War.

By article 107 of the regulations, the Secretary of War is, when the circumstances disclosed by the report of the surveying officer justify it, authorized to relieve the state from accountability; but, "if in the opinion of the Secretary of War the evidence submitted with the proceedings is not sufficient to show that the loss or destruction of the property could not have been avoided by the exercise of reasonable care, the money value thereof will be charged against the allotment of the state,

* * * under section 1661 of the Revised Statutes as amended, unless the property is replaced in kind by purchase under the provisions of section 17 of the military law, in which case further action will be rendered unnecessary."

The conditions of the bond in suit are: "If the said W. H. Stoddard shall safely keep said property and return the same whenever ordered by competent authority, then this obligation to be null and void; but should said W. H. Stoddard fail to keep said property, or any portion thereof, or negligently allow the same to become injured or out of repair (ordinary wear and tear casualties of the service excepted), or fail to return the same in good condition when ordered by competent authority, then the said obligors herein shall pay the state of Alabama, the value of the property not delivered, or in case of injury to such property the amount required to put the same in good order and condition."

(2) In construing these conditions of the bond and determining the liability of the obligors thereon, it becomes necessary to construe them in the light of the statutes and regulations under which the bond was given as though such regulations and statutes were a part thereof.— U. S. F. & S. Co. v. Union Trust & Savings Co., 142 Ala. 532; 38 South. 177. And when thus considered it is clear that the criterion of value in measuring liability is the invoice value of arms and equipment lost in case of loss, or, in other words, the sum of money necessary to enable the state to replace the lost arms and equipment, and in case of injury the necessary sum requisite to restore the injured property to good condition so that it can be used for military purposes. This conclusion is re-enforced by the fact, which is a matter of which the courts will take judicial knowledge, that this species of property has no general market value under ordinary condi-

tions; it is only valuable as military equipment, and when it becomes unfit for that purpose provisions are made for its return to the government and credit to be given therefor. It is manifest that a second-hand equipment in good condition is as valuable for the purposes for which it is designed as a new equipment. Therefore the ordinary rules fixing the measure of recovery for the loss or destruction of property in general at its market value have no application.

(3) Article 74 of the army regulation provides that the responsibility of officers of the organized militia for damage to or destruction of property must be determined by the laws of the state, district, or territory of such organized militia; and section 948 of the Code provides that: "No commissioned officer giving bond for the safe-keeping of arms or other public property is liable for loss by fire, riot, or insurrection, or other casualty of the service, unless held liable by a board of survey to be appointed by, and whose finding is approved by, the Governor."

It is clear that the finding of a board of survey and its approval by the Governor is a prerequisite to liability where the property was lost or injured as a casualty of the service.

The evidence in this case shows without dispute that the property in question was lost by the company while in command of Capt. Folmar, who was elected as the successor of Capt. Stoddard, in suppressing a riot, and that the company and its equipment were taken out by Capt. Folmar under the orders of the colonel of the regiment. On this evidence the state was not entitled to recover in the absence of a showing that a board of survey had been appointed by the Governor and a finding of liability by such board approved by the Governor. Therefore the error of the court in applying an incor-

rect rule for the admeasurement of damages is without injury.

There being no error in the record prejudicial to appellant, the judgment is affirmed.

Affirmed.